**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| GOFORIT ENTERTAINMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DIGIMEDIA.COM, L.P., | § | No. 3:08-cv-2011-D |
| CYBERFUSION.COM, L.P., | § | |
| HAPPYDAYS, INC., | § | |
| DIGIMEDIA.COM MANAGEMENT, INC., | § | |
| and SCOTT DAY, | § | |
| | § | |
| Defendants. | § | |

**Defendants' Brief in Support of their**
**Motion for Partial Summary Judgment**

Mack J. Morgan, OBA#6397
Phillip L. Free, Jr., OBA #15765
Drew T. Palmer, OBA #21317
CROWE & DUNLEVY
20 N. Broadway, Suite 1800
Oklahoma City, OK  73102
Phone:  (405) 235-7700
mack.morgan@crowedunlevy.com
phil.free@crowedunlevy.com
drew.palmer@crowedunlevy.com

Michael L. Atchley
Texas State Bar No. 01397600
POPE, HARDWICKE, CHRISTIE,
SCHELL, KELLY & RAY, LLP
901 Forth Worth Club Building
306 West 7th Street
Fort Worth, Texas 76106
Telephone: (817) 332-3245
Facsimile: (817) 877-4781
matchley@popehardwicke.com

# Table of Contents

Table of Contents ................................................................................. i

Table of Authorities ........................................................................... iii

Brief in Support of Motion for Partial Summary Judgment ....................................1

I.  Summary....................................................................................1

   A. Defendants Have Not Used Plaintiff's Trademark ........................................1

   B. The Elements of Plaintiff's Cyberpiracy Claim............................................3

   C. The Elements of Plaintiff's Claim of Federal
      Service Mark Infringement .............................................................4

   D. The Elements of Plaintiff's Claim of Use of
      False Designations of Origin, False Descriptions,
      and False Representations..............................................................5

   E. The Elements of Plaintiff's Claim of Common Law
      Trademark Infringement .................................................................6

   F. The Elements of Plaintiff's Claim of Common Law
      Unfair Competition ......................................................................6

   G. Plaintiff's Claim of Punitive Damages ........................................................7

II. The Undisputed Facts ..........................................................................8

III. Arguments and Authorities.....................................................................14

   A. Plaintiff's Cyberpiracy Claim Fails as a Matter of Law ............................. 14

      1. This is not a cybersquatting case ......................................................... 15

      2. Defendants are not alleged to have misused a "domain name"
         as defined by the Act .................................................................. 16

3.  Defendants have not acted with bad-faith intent ................................... 17

4.  Defendants actions are within the Act's fair-use safe harbor ............... 20

5.  Plaintiff's claim for enhanced damages fails as a matter of law ........... 21

B.  Plaintiff's Claim of Federal Service Mark Infringement
Fails as a Matter of Law ............................................................................. 21

1.  Defendants have not "used" a copy or imitation of the alleged mark ... 22

2.  Plaintiff's claim fails as a matter of law ............................................... 23

C.  Plaintiff's Claim under 15 U.S.C. § 1125 Fails as a Matter of Law ........... 23

D.  Plaintiff's Common Law Trademark Infringement
Claim Fails as a Matter of Law ................................................................... 24

E.  Plaintiff's Unfair Competition Claim Fails as a Matter of Law ................. 24

F.  Plaintiff's Claim for Punitive Damages Fails as a Matter of Law ............. 25

G.  Neither Scott Day nor Digimedia.com Management, Inc.
Own Any Domain Name at Issue  ............................................................... 26

IV.  Conclusion ...................................................................................................... 26

Signature of Counsel ............................................................................................ 27

Certificate of Service ............................................................................................ 28

## Table of Authorities

**Page**

**Cases**

*All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484
(Tex.App. – Fort Worth 1999, no pet.) ..........................................................6, 24

*American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321 (5th Cir.
2008)...................................................................................................................5, 21

*AMX Corp v. Pilote Films*, 2007 WL 1695120 (N.D. Tex. 2007)..............6, 7, 24, 25

*E. & J. Gallo Winery v. Spiderwebs, Ltd.*, 286 F.3d 270 (5th Cir. 2002).................15

*Goforit Entertainment, LLC v. Digimedia.com, L.P.*, 513 F.Supp2d 1325
(M.D. Fla. 2007)......................................................................................................12

*Hampton's Locations, Inc. v. Rubens*, 640 F.Supp.2d 208 (E.D.N.Y. 2009) .4, 14, 15

*Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement
Corp.*, 53 S.W.3d 799 (Tex.App. – Austin 2001, pet. denied)......................6, 24

*Keane v. Fox Television Stations, Inc.*, 297 F.Supp.2d 921 (S.D. Tex. 2004) .....7, 25

*Logan v. Burgers Ozark Country Cured Hams*, 263 F.3d 447 (5th Cir. 2001) ....5, 23

*National Cable & Telecommunications Ass'n v. Brand X Internet Services*,
545 U.S. 967, 125 S.Ct. 2688 (2005) ................................................................10

*Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d
1231 (11th Cir. 2007) ..................................................................................5, 22

*Southern Co. v. Dauben*, 324 Fed. Appx. 309 (5th Cir. 2009) ......................4, 14, 20

*Sporty's Farm, LLC v. Sportsman's Market, Inc.*, 202 F.3d 489 (2d Cir.
2000)..........................................................................................................................9

*TGI Friday's, Inc. v. Great Northwest Restaurants, Inc.*, 652 F.Supp.2d 763
(N.D. Tex. 2009) ........................................................................................5, 21

*TMI, Inc. v. Maxwell*, 368 F.3d 433 (5th Cir. 2004) .............................................15

*U-Haul International v. WhenU.com, Inc.*, 279 F.Supp2d 723 (E.D. Va.
2003).......................................................................................................................22

**Page**

**Statutes**

15 U.S.C. § 1114 ...................................................................................................4, 21

15 U.S.C. § 1117 ...................................................................................................4, 21

15 U.S.C. § 1125 ........................................................... 3, 4, 5, 14, 16, 17, 20, 23, 24

15 U.S.C. § 1127 ........................................................................................................16


**Other Authorities**

Local Rule 56.5 ...........................................................................................................1

S. Rep. 106-140 (1999), located at 1999 WL 594571 ........................................15, 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GOFORIT ENTERTAINMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DIGIMEDIA.COM, L.P., | § | No. 3:08-cv-2011-D |
| CYBERFUSION.COM, L.P., | § | |
| HAPPYDAYS, INC., | § | |
| DIGIMEDIA.COM MANAGEMENT, INC., | § | |
| and SCOTT DAY, | § | |
| | § | |
| Defendants. | § | |

**Defendants' Brief in Support of their
Motion for Partial Summary Judgment**

Defendants Digimedia.com, L.P., Cyberfusion.com, L.P., HappyDays, Inc., Digimedia.com Management, Inc., and Scott Day respectfully file this Brief in Support of their Motion for Summary Judgment, in accordance with LR 56.5.

## I.
## Summary

A.    *Defendants Have Not Used Plaintiff's Trademark.*

This case boils down to one undisputed fact: Defendants have not used Plaintiff's alleged "GOFORIT" mark in any of their domain names or on any of their websites. All of Plaintiff's claims necessarily depend on the allegation that Defendants have used the "GOFORIT" mark, but the allegation has proven to be untrue. Therefore, all of Plaintiff's claims fail as a matter of law.

Plaintiff brought this suit against Defendants for alleged cyberpiracy and trademark infringement based on an allegation that Defendants incorporated Plaintiff's alleged trademark ("GOFORIT") into some Internet domain names. However, it is now undisputed that Defendants have never incorporated "GOFORIT," or any derivative thereof, into a domain name or used it on a website. There are hundreds and hundreds of Internet domains that do incorporate "GOFORIT" or "GO4IT," but Defendants are not affiliated with any of them (see Footnote 32, below).

Lacking this critical fact that is necessary for all of its claims, Plaintiff is left to argue that "wildcard DNS" constitutes cyberpiracy and trademark infringement. "Wildcard DNS" in no way involves Defendants taking action to incorporate "GOFORIT" into a domain name or website. Rather, it is simply a system by which the subdomains under a domain name are "wild carded" so that a user is directed to a website despite having added extra information as a subdomain in the address block. For example, if one types "xyzjjhtnnh.bing.com," the "bing.com" website (which is not affiliated with Defendants) appears. The same is true if one types "goforit.bing.com" or "digimedia.bing.com."

This is a common function on the Internet, and is a default setting when a person registers a domain name through (for example) Godaddy.com. Defendants'

websites often utilize wildcard DNS, but "GOFORIT" has been specifically excluded from the wildcard DNS on Defendants' sites since 2006.[1]

In using wildcard DNS, Defendants have done nothing to set up "GOFORIT," or any other particular name or word, as a subdomain on a website. Therefore, using wildcard DNS — which Plaintiff's own expert agrees is "allowed" (see footnote 26, below) — does not constitute cybersquatting or trademark infringement. It is widely used, and if it is found to be cybersquatting or trademark infringement then many people and entities beyond Defendants (e.g., anyone who uses wildcard DNS) would be subject to potential liability by anyone who claims to own a trademark.

Plaintiff's claims all fail as a matter of law because Defendants have not incorporated "GOFORIT" into a domain name or website and the use of wildcard DNS does not constitute cyberpiracy or trademark infringement.

## B. The Elements of Plaintiff's Cyberpiracy Claim

Plaintiff's first claim is for alleged cyberpiracy under 15 U.S.C. § 1125(d) (page 13 of the Complaint). To succeed on this claim, Plaintiff must prove (1) Defendants registered, trafficked in, or used a domain name; (2) that was identical or confusingly similar to Plaintiff's mark; (3) Plaintiff's mark, at the time

---

[1] Plaintiff initially sued Defendants in Florida in 2006, bringing essentially the same claims being asserted here. This was the first time Defendants had ever heard of Plaintiff, but Defendant excluded "goforit" from the wildcard DNS capability in an effort to be as accommodating as possible to Plaintiff's wishes, despite the fact that Plaintiff's legal claim is baseless.

Defendants registered their domain name, was distinctive; and (4) Defendants committed these acts with a bad-faith intent to profit from Plaintiff's mark.[2]

Plaintiff's claim fails as a matter of law because (1) there is no evidence that Defendants have registered, trafficked in, or used any domain name that is in any way similar to Plaintiff's mark ("GOFORIT") and (2) there is no evidence that Defendants acted with any bad-faith intent to profit from Plaintiff's mark. Therefore, there is no evidence to support elements 2 or 4 of Plaintiff's claim, and the claim fails as a matter of law.

Plaintiff also alleges (in paragraph 58 of the Complaint) that Defendants' alleged acts were and continue to be deliberate, willful, and wanton. This allegation is presumably being made in an effort to enhance damages under 15 U.S.C. § 1117. However, this claim fails as a matter of law because there is no evidence to support it.

## C.     The Elements of Plaintiff's Claim of Federal Service Mark Infringement

Plaintiff's second claim is for alleged service mark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1). (See page 14 of the Complaint, at paragraph 60). To succeed on this claim, Plaintiff must show (1) ownership of a legally protectable mark; and (2) infringement of the mark, by proving that Defendants (a) have used a reproduction, counterfeit, copy, or colorable imitation of the mark; (b) without Plaintiff's consent; (c) in commerce; (d)

---

[2] 15 U.S.C. § 1125(d); *Hampton's Locations, Inc. v. Rubens*, 640 F.Supp.2d 208, 214 (E.D.N.Y. 2009); *Southern Co. v. Dauben*, 324 Fed. Appx. 309, 314 (5th Cir. 2009).

in connection with the sale, offering for sale, distribution, or advertising of any goods; and (e) where such use is likely to cause confusion, or to cause mistake, or to deceive.[3] It has been held that "the first step of a trademark infringement action is to demonstrate an unauthorized 'use' of the Plaintiff's mark in commerce."[4]

Here, Plaintiff's claim fails as a matter of law because there is no evidence that Defendants have "used" Plaintiff's alleged mark or a reproduction, counterfeit, copy, or colorable imitation thereof.

### D. The Elements of Plaintiff's Claim of Use of False Designations of Origin, False Descriptions, and False Representations

Plaintiff's third claim is for alleged false designation of origin, false descriptions, and false representations, which Plaintiff contends to be actionable under 15 U.S.C. § 1125(a). (See page 15 of the Complaint, at Paragraph 66). To succeed on this claim, Plaintiff must show (a) Defendants made a false statement of fact about their services; (b) that such statement was likely to deceive a substantial segment of its audience; (c) that such deception was likely to influence purchasing decisions; and (d) that Plaintiff was injured as a result.[5]

Plaintiff's claim fails as a matter of law because there is no evidence that Defendants made any false statement of fact about their services, no evidence that

---

[3] *TGI Friday's, Inc. v. Great Northwest Restaurants, Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, J.); *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

[4] *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1242 (11th Cir. 2007).

[5] 15 U.S.C. § 1125(a); *Logan v. Burgers Ozark Country Cured Hams*, 263 F.3d 447, 462 (5th Cir. 2001).

Defendants made a statement that was likely to deceive a substantial segment of their audience, no evidence that Defendants engaged in deception that was likely to influence purchasing decisions, and no evidence that Plaintiff was damaged by any false statement of Defendants.

### E.    The Elements of Plaintiff's Claim of Common Law Trademark Infringement.

Plaintiff's fourth claim is for alleged common law trademark infringement under Texas law (See page 16 of the Complaint). To succeed on this claim, Plaintiff must meet the same elements that are required in the federal trademark infringement claim.[6] Therefore, Plaintiff must prove (1) the name it seeks to protect is eligible for protection; (2) it is the senior user of the name; (3) there is a likelihood of confusion between its mark and that of the other user; and (4) the likelihood of confusion will cause irreparable injury for which there is no adequate legal remedy.[7]

Plaintiff's claim fails as a matter of law because Digimedia has not used Plaintiff's alleged mark.

### F.    The Elements of Plaintiff's Claim of Common Law Unfair Competition.

Plaintiff's fifth claim is for alleged common law unfair competition under Texas law (page 16 of the Complaint). This kind of claim is "a general rubric under which fall all statutory and non-statutory causes of action arising out of dishonesty

---

[6]*AMX Corp v. Pilote Films*, 2007 WL 1695120, at *24 (N.D. Tex. 2007) (Fitzwater, J.), citing *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.,* 991 S.W.2d 484, 488 (Tex.App. – Fort Worth 1999, no pet.)

[7]*Id.*, citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 (Tex.App. – Austin 2001, pet. denied).

in industrial or commercial matters."[8] To succeed on this claim, Plaintiff "must show that the defendant committed an illegal act that interfered with the plaintiff's ability to conduct its business; the illegal act need not necessarily violate criminal law, but must at least be an independent tort."[9] Plaintiff must prove an independent substantive tort to succeed on a claim of unfair competition.[10]

Plaintiff's claim fails as a matter of law because there is no evidence by which Plaintiff can prove an independent substantive tort claim against Defendants. As is shown above, all of Plaintiff's other claims fail as a matter of law; further, Plaintiff has not pled any other substantive tort claim that would support liability for alleged unfair competition.

### G.    Plaintiff's Claim for Punitive Damages.

The Complaint includes a sixth claim, for punitive damages (page 17 of the Complaint), but does not include a citation to any legal authority supporting such a claim. Plaintiff alleges that Defendants intentionally pursued a course of conduct in wanton disregard of Plaintiff's injury (paragraph 78 of the Complaint). There is no evidence to show that Defendants intentionally committed any wrong or acted in wanton disregard of Plaintiff's rights. Defendants have never incorporated Plaintiff's alleged mark in any domain name, and had never heard of Plaintiff until Plaintiff filed suit against them in 2006 (in a lawsuit in Florida).

---

[8] *AMX Corp v. Pilote Films*, 2007 WL 1695120, at *23 (N.D. Tex. 2007) (Fitzwater, J.), quoting *Keane v. Fox Television Stations, Inc.,* 297 F.Supp.2d 921, 938 (S.D. Tex. 2004).
[9] *Id*.
[10] *Id*.

## II.
## The Undisputed Facts

1.      Defendants Digimedia.com, L.P. ("Digimedia"), Cyberfusion, L.P. ("Cyberfusion"), and HappyDays, Inc. ("HappyDays") are the owners of about 1700 Internet domain names.[11]

2.      Defendant Digimedia.com Management, Inc. ("Digimedia Mgmt") does not own any of the domain names or operate any of the websites at issue in this suit; rather it is simply a minority general partner in Digimedia and Cyberfusion.[12]

3.      Defendant Scott Day also does not own and has not registered any of the domain names or operate ay of the websites at issue in this suit; rather, he is a shareholder and officer of HappyDays and Digimedia Mgmt.[13]

4.      Scott Day was a watermelon farmer in Terral, Oklahoma, when in 1996 he happened upon, and convinced his father to purchase, the Internet domain name "watermelons.com" in an effort to assist with the family farm.[14]

5.      After acquiring "watermelons.com," Day investigated the possibility of acquiring other generic domain names.[15] Eventually, Day's ideas and efforts led to Digimedia, Cyberfusion, and HappyDays acquiring some of the domain names at issue in this suit, including "recipes.com," "webdesigns.com," chairs.com,"

---

[11] Declaration of Scott Day, para. 14 (App. 3).
[12] *Id*. at para. 41 (App. 8).
[13] *Id*. at para. 40 (App. 8).
[14] Day Declaration at paras. 7-9 (App. 2).
[15] Day Declaration at para. 12 (App. 3).

"org.com," and "dress.com."[16] The domain names owned by Digimedia, Cyberfusion, and HappyDays now serve as the revenue-generating component of their successful advertising business.

6.     The advertising business of Digimedia, Cyberfusion, and HappyDays largely consists of pay-per-click advertising, in which Digimedia (for example) permits a third party (e.g., Yahoo!) to provide advertisements on Digimedia's websites. The advertisements are linked on Digimedia's websites in such a way that clicking on them will take the user to the website of a business (usually) that wants to generate Internet traffic. That business then pays a per-click fee to Yahoo! for providing the link, and Yahoo! pays a percentage of the fee to Digimedia.[17]

7.     Technically speaking, the domain names that Digimedia, Cyberfusion, and HappyDays own are "second-level" domains.[18] A second-level domain is the portion of the domain name that immediately precedes the top-level domain. The top-level domains are such things as ".com," ".org," and ".gov." For example, in the domain name "watermelons.com," the ".com" portion indicates the top-level domain. The "watermelons" portion indicates the second-level domain.[19] Entities such as Defendants cannot own or register — or acquire from a registrar like

---

[16] Day Declaration at para. 14 (App. 3).
[17] Day Declaration at para. 15 (App. 4).
[18] Day Declaration at para. 18 (App. 5).
[19] Day Declaration at para. 17 (App. 4); see also *Sporty's Farm, LLC v. Sportsman's Market, Inc.*, 202 F.3d 489, 492-93 (2d Cir. 2000), which includes a similar explanation.

Godaddy.com — top-level domains; rather, they can own or register only second-level domains within a given top-level domain.[20]

8.      The owner of a second-level domain can set up subdomains, such as a third-level domain, under the second-level domain. For example, "uscourts.gov" is a second-level domain, under which one can find the third-level domain "txnd.uscourts.gov."[21] Entities such as Defendants do not and cannot register third-level domains.[22] Domain name registrars only register top-level domains and second-level domains.[23]

9.      Instead of (or in addition to) the creation of specific subdomains under a second-level domain, a second-level domain can operate in conjunction with "wildcard DNS."[24] When wildcard DNS is enabled, essentially anything typed as a subdomain will lead the user to the website of the second-level domain. For example, typing "fhkjfdhskdfjhskdf.bing.com" into an Internet browser will take the user to the bing.com website, as will typing "goforit.bing.com" or "digimedia.bing.com."[25]

---

[20] Day Declaration at para. 19 (App. 5).
[21] Day Declaration at para. 20 (App. 5).
[22] *Id.*
[23] Tewksbury Deposition, page 88 lines 13-17 (App. 255).
[24] Day Declaration at para. 21 (App. 5); The acronym "DNS" stands for "Domain Name System," which, in essence, is the system by which the name a user types into an Internet browser matches up with the proper web page that the user is attempting to access. See *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967, 987, 125 S.Ct. 2688, 2703 (2005).
[25] Day Declaration at para. 22 (App. 5); Defendants request the Court to take judicial notice of the fact that these addresses resolve to the bing.com site.

10.     Wildcard DNS is a common, allowable process used by numerous reputable companies.[26] The two largest domain-name registrars — Godaddy.com and Network Solutions — enable wildcard DNS by default when someone registers a domain name through them.[27] Also, such sites as "nascar.com," "U2.com," "dallasbar.org," and "godaddy.com" utilize wildcard DNS (so, for example, "goforit.godaddy.com" would lead one to the Godaddy.com website).

11.     Digimedia, Cyberfusion, and HappyDays utilize wildcard DNS on their websites. For example, typing "gibberish.recipes.com" into an Internet browser will take the user to the "recipes.com" website.[28]

12.     Defendants have never set up "GOFORIT" as a subdomain on any websites.[29]

13.     None of the hyperlinks on the websites of Digimedia, Cyberfusion, and HappyDays include the term "GOFORIT."[30] Defendants have never used the term "GOFORIT" in any advertising or anywhere else on the Defendants' websites.[31]

---

[26] Day Declaration at para. 23 (App. 5); see also Expert Report of Jeffrey Bedser, at Appendix page 32 (Page 22 of the Expert Report); see also Deposition of Charles Miller (Plaintiff's expert), at page 104 lines 16-20 (App. 243), where he testifies that it is allowed.
[27] Day Declaration at para. 24 (App. 5).
[28] Day Declaration at para. 25 (App. 6).
[29] Day Declaration at para. 26 (App. 6).
[30] Day Declaration at para. 27 (App. 6).
[31] Day Declaration at para. 28 (App. 6).

14.     There are hundreds of websites that incorporate "GOFORIT" or a derivative thereof into the domain name, but those sites are not associated with Defendants.[32]

15.     Defendants have never used any false or misleading contact information to register domain names, and have never offered to sell any domain names to Plaintiff.[33]

16.     Defendants had never heard of Plaintiff until 2006, when Plaintiff filed a lawsuit against some of the Defendants in a federal court in Florida.[34] Prior to the lawsuit, Scott Day had never heard of or visited "goforit.com."[35]

17.     In the Florida lawsuit, Plaintiff asserted essentially the same claims that are being asserted here.[36] The suit was dismissed in 2007 for lack of personal jurisdiction. See *Goforit Entertainment, LLC v. Digimedia.com, L.P.*, 513 F.Supp2d 1325 (M.D. Fla. 2007).

18.     In 2006, after getting notice of Plaintiff's Florida lawsuit, Defendants took actions to exclude "goforit" and "go4it" from the wildcard DNS function of their websites.[37] The terms have been excluded from the DNS function of

---

[32] See Expert Report of Jeffrey Bedser (App. 29-31 and 153-201).
[33] Day Declaration at paras 32-33 (App. 6).
[34] Day Declaration at paras 29-30 (App. 6).
[35] *Id*.
[36] Day Declaration at para. 29-30 (App. 6); see also the Complaint in the Florida lawsuit, a copy of which is at App. 206-224 (Defendants request the Court to take judicial notice of the Complaint).
[37] Day Declaration at para. 37 (App. 7).

Defendant's websites ever since.[38] Since that time, even the wildcard DNS function would not lead one who types into a browser (for example) goforit.digimedia.com to the Digimedia.com website.

19.    Defendants did not utilize wildcard DNS with any intent to harm Plaintiff or to create any confusion with respect to Plaintiff.[39] Again, Defendants had never heard of Plaintiff when Digimedia, Cyberfusion, and HappyDays began using wildcard DNS, and Defendants removed "goforit" from the wildcard DNS function when they learned that Plaintiff was alleging that a problem existed.[40]

20.    Plaintiff is a limited liability company, with one managing member (Russell Tewksbury) and no employees.[41] Since its formation in 2004, Plaintiff has provided an indexed guide and directory database of websites at the domain name "goforit.com."[42] Plaintiff claims to own the federally registered trademark GOFORIT, which it claims to use in connection with its "goforit.com" website.[43]

21.    Plaintiff is "not spending money on any advertising," and has never spent more than about $6,000.00 in total advertising expenditures during the entirety of the company's existence, for a couple of parade floats and some hats and

---

[38] *Id.*
[39] Day Declaration at para. 29 (App. 6).
[40] *Id.* at paras. 29 and 37 (App. 6-7).
[41] Deposition of Russell Tewksbury, page 8 line 24 – page 9 line 14 (App. 252-253).
[42] Complaint, para. 17.
[43] Complaint, paras 14 and 17.

t-shirts.[44] Plaintiff does not receive any revenue from its use of the GOFORIT mark, and has never so much as opened a bank account.[45]

22.    Plaintiff has not produced any evidence to support any amount of damages it claims to have suffered as a result of the alleged actions of Defendants.

23.    Plaintiff has not produced any evidence to support any claim that it lost any business as a result of any alleged actions undertaken by Defendants.

**III.**
**Arguments and Authorities**

**A.    Plaintiff's Cyberpiracy Claim Fails as a Matter of Law.**

Plaintiff's first Count is for alleged cyberpiracy (page 13 of the Complaint). According to the Complaint, this claim arises under Section 43(d) of the Lanham Act, which is codified at 15 U.S.C. § 1125(d)  and is part of the Anti-Cybersquatting Consumer Protection Act ("ACPA").[46] To succeed on this claim, Plaintiff must prove (1) Defendants registered, trafficked in or used a domain name; (2) that was identical or confusingly similar to Plaintiff's mark; (3) Plaintiff's mark, at the time Defendants registered their domain name, was distinctive; and (4) Defendants committed these acts with a bad-faith intent to profit from Plaintiff's mark.[47]

---

[44] Tewksbury Deposition 187 line 17 – page 188 line 11 (App.256); *see also* Plaintiff's Response to HappyDays Interrogatory No. 7 (App. 229).
[45] Tewksbury Deposition, page 21 lines 13-23 (App. 254).
[46] See paragraph 56 of the Complaint.
[47] 15 U.S.C. § 1125(d); *Hampton's Locations, Inc. v. Rubens*, 640 F.Supp.2d 208, 214 (E.D.N.Y. 2009); *Southern Co. v. Dauben*, 324 Fed. Appx. 309, 314 (5th Cir. 2009).

1.    *This is not a cybersquatting case.*

The ACPA was enacted to "prohibit[] the bad-faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from the goodwill associated with such marks – a practice commonly referred to as 'cybersquatting.'"[48] For example, if someone acting in bad faith registers "ernestandjuliogallo.com" with the intent to profit from the Ernest & Julio Gallo trademark, that would violate of the Act.[49] A cybersquatter is someone who, with a bad-faith intent to profit, registers as a domain name a well-known or distinctive mark.[50] In other words, one cannot legally obtain (for example) "pepsi.com" and then hold Pepsico hostage by demanding a profit to relinquish the domain name.

The Act does not apply to the facts of this case. This is not a case in which Defendants have set out to register or use "goforit.com" in attempt to profit from Plaintiff's alleged "GOFORIT" mark. There is no allegation or evidence that Defendants have even attempted such a thing. Plaintiff's claim is simply not one for cybersquatting or cyberpiracy, and the ACPA claim fails as a matter of law.

---

[48] S. Rep. 106-140 (1999), located at 1999 WL 594571, at *4 (under the heading "Purpose").
[49] *E. & J. Gallo Winery v. Spiderwebs, Ltd.*, 286 F.3d 270, 272 *et seq*. (5th Cir. 2002).
[50] See *TMI, Inc. v. Maxwell*, 368 F.3d 433, 439 n. 8 (5th Cir. 2004); *Hampton's Locations*, 640 F.Supp.2d at 213-14.

## 2.     Defendants are not alleged to have misused a "domain name" as defined by the Act.

The Act states that one cannot register, traffic in, or use a "domain name."[51]

A "domain name," as defined by the Act, is limited to second-level domain names

(e.g., the "uscourts" portion of "uscourts.gov" or the "goforit" portion of

"goforit.com"). This is because the Act specifically defines "domain name" to

include only names registered with or assigned by a domain name registrar:

> The term "domain name" means any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet.

15 U.S.C. § 1127 (penultimate definition in the Section). The parties agree that only

second-level domain names can be registered with or assigned by a registrar.[52]

The Act's definition of "domain name" is intended by Congress to be

"narrow," to "essentially cover[] the second-level domain names assigned by

domain name registration authorities," and to "exclude[] such things as screen

names, file names, and other identifiers not assigned by a domain name registrar or

registry."[53] Therefore, the "domain name" that cannot be improperly "used" is only

---

[51] 15 U.S.C. § 1125(d)(1)(A)(ii).
[52] Tewksbury Deposition page 88 lines 13-17 (App. 255).
[53] S. Rep. No. 106-140 (1999), under the heading "Definition of 'Domain Name'," located at 1999 WL 594571, at *10.

the second-level domain, since that is the only kind of domain that can be registered with or assigned by a registrar.[54]

Plaintiff has not even alleged that Defendants have used a second-level domain that is similar to "goforit." Rather, Plaintiff's entire case is founded upon an alleged use of third-level domains, subdomains, or (actually) wildcard DNS as it relates to subdomains. There is, therefore, simply no allegation that Defendant's have wrongfully used a "domain name" as defined by the Act.

Plaintiff's claim fails to meet even the first element. The claim therefore fails as a matter of law.

### 3. *Defendants have not acted with any bad-faith intent.*

Even if Defendants were somehow found to have used a "domain name" similar to Plaintiff's alleged mark, they certainly have not done so with bad-faith intent (which is a required element of Plaintiff's claim). In fact, there is no evidence of an "intent" of any kind to use "goforit" or "goforit.com." Defendants had never heard of Plaintiff, its mark, or its website, when they began using wildcard DNS, and the mere setting up of wildcard DNS does not exhibit an intent to use "goforit" or any other specific name or word. The Act lists nine non-exclusive factors for analyzing whether a cybersquatter has acted with a bad-faith intent,[55] and none of those apply to Defendants. Since Defendants undertook no deliberate action to use in any way Plaintiff's alleged mark, and had never heard of Plaintiff, and since

---

[54] Tewksbury Deposition page 88 lines 13-17 (App. 255).
[55] 15 U.S.C. § 1125(B) (i)(I)-(IX).

Defendants' acquisition of domain names is limited to generic terms and not to famous or distinctive marks, there is simply no intent, and certainly no bad-faith intent, that would in any way fit under the Act's prohibitions.

The lack of a bad-faith intent is further illustrated by the fact that the parties' respective websites are not similar in their appearance. These are some examples:[56]



| Digimedia's Recipes.com website (located at http://recipes.com) | Goforit's Website (located at http://www.goforit.com) |
| --- | --- |

---

[56] Defendants request the Court to take judicial notice of these websites and their appearance.

| Digimedia's Bed.com website (located at http://bed.com) | Goforit's Website (located at http://www.goforit.com) |
|---|---|



| Digimedia's Dress.com website (located at http://dress.com) | Goforit's Website (located at http://www.goforit.com) |
|---|---|



| **HappyDays, Inc.'s Prayers.com website (located at http://prayers.com)** | **Goforit's Website (located at http://www.goforit.com)** |
| --- | --- |



### 4. *Defendants' actions are within the Act's fair-use safe harbor.*

The Act provides that bad-faith intent cannot be found in any case "in which the court determines that the person [who is alleged to have registered, trafficked in, or used a domain name] believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful."[57] Here, Plaintiff's claim relies on Defendant's use of wildcard DNS, which is widely used by highly reputable companies and other entities, and which Plaintiff's own expert admits to be "allowed." (See Footnote 26, above). Defendants believed, and certainly had reasonable grounds to believe, that their use (if any) was fair and lawful.

Defendants simply are not cybersquatters. Plaintiff's cyberpiracy claim does not fit the facts of this case, and it fails as a matter of law.

---

[57] 15 U.S.C. § 1125(1)(B)(ii); see *Southern Co. v. Dauben*, 324 Fed.Appx. 309, 312 (5th Cir. 2009).

**5.      *Plaintiff's claim for enhanced damages fails as a matter of law.***

The Complaint includes an allegation (in paragraph 58) that Defendants' acts "have been, and continue to be, deliberate, willful and wanton, making this an 'exceptional' case within the meaning of 15 U.S.C. § 1117." Plaintiff presumably makes this allegation in an effort to obtain an award of attorney's fees under 15 U.S.C. § 1117(a). However, as shown above, Defendants have not committed a violation of the Act, let alone a deliberate, willful, wanton, or otherwise "exceptional" violation. Therefore, this claim fails as a matter of law.

**B.      Plaintiff's Claim of Federal Service Mark Infringement Fails as a Matter of Law.**

Plaintiff's second claim is for alleged service mark infringement under Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1). (See page 14 of the Complaint, at paragraph 60). To succeed on this claim, Plaintiff must show (1) ownership of a legally protectable mark; and (2) infringement of the mark, by proving that Defendants (a) have used a reproduction, counterfeit, copy, or colorable imitation of the mark; (b) without Plaintiff's consent; (c) in commerce; (d) in connection with the sale, offering for sale, distribution, or advertising of any goods; and (e) where such use is likely to cause confusion, to cause mistake, or to deceive.[58]

---

[58] *TGI Friday's, Inc. v. Great Northwest Restaurants, Inc.*, 652 F.Supp.2d 763, 767 (N.D. Tex. 2009) (Fitzwater, J.); *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

**1.      Defendants have not "used" a copy or imitation of the alleged mark.**

Assuming that Plaintiff has a legally protectable mark, Defendants have not "used a reproduction, counterfeit, copy, or colorable imitation of the mark." This is fatal to Plaintiff's claim. It has been held that "the first step of a trademark infringement action is to demonstrate an unauthorized 'use' of the Plaintiff's mark in commerce."[59]

Defendants have not taken any action to "use" Plaintiff's mark. If an Internet user types "goforit.digimedia.com" into a browser, and is taken to the Digimedia website, that is a function of how the Internet, through the Domain Name System, operates, and does not constitute a "use" of "goforit" by Digimedia. See *U-Haul International v. WhenU.com, Inc.*, 279 F.Supp2d 723, 728 (E.D. Va. 2003) ("'use' is not established merely because trademarks are simultaneously visible to a consumer . . . . The appearance of WhenU's ads on a user's computer screen at the same time as the U-Haul web page is a result of how applications operate in the Windows environment and does not constitute 'use' pursuant to the Lanham Act.")

Digimedia did nothing to hijack efforts to get to Plaintiff's website, and did nothing to manipulate how the typing of the letters "goforit" would interact with the computer's processes (that is, because of wildcard DNS, typing "fdfhdjsfksdhf" would yield the same result as typing "goforit" – the series of letters "goforit" was not targeted in any way to create a specific result). An Internet user would generally

---

[59] *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1242 (11th Cir. 2007).

have to intentionally type in "digimedia.com" (or one of the other websites at issue) to land on that website. Typing "goforit" had nothing to do with the result, and Defendants did nothing to manipulate the result that would be obtained when "goforit" was typed. There simply has been no "use" of "goforit" as contemplated by the Act.

### 2.   *Plaintiff's claim fails as a matter of law.*

To summarize, Plaintiff's trademark-infringement claim fails as a matter of law because Defendants have not "used" Plaintiff's alleged mark. This claim should therefore be dismissed.

### C.   Plaintiff's Claim under 15 U.S.C. § 1125 Fails as a Matter of Law.

Plaintiff's third claim is for alleged false designation of origin, false descriptions, and false representations, which Plaintiff contends to be actionable under 15 U.S.C. § 1125(a). (See page 15 of the Complaint, at Paragraph 66). To succeed on this claim, Plaintiff must show (a) Defendants made a false statement of fact about its services; (b) that such statement was likely to deceive a substantial segment of its audience; (c) that such deception was likely to influence purchasing decisions; and (d) that Plaintiff was injured as a result.[60]

As is noted above, Plaintiff's complaint in this case has to do with wildcard DNS. There is no evidence that Defendants made a false statement of any kind

---

[60] 15 U.S.C. § 1125 (a); *Logan v. Burgers Ozark Country Cured Hams*, 263 F.3d 447, 462 (5th Cir. 2001).

about their services or damaged Plaintiff. Plaintiff's claim under 15 U.S.C. §1125(a) therefore fails as a matter of law.

### D.   Plaintiff's Common Law Trademark Infringement Claim Fails as a Matter of Law.

Plaintiff's fourth claim is for alleged common law trademark infringement under Texas law (See page 16 of the Complaint). To succeed on this claim, Plaintiff must meet the same elements that are required in the federal trademark infringement claim.[61] Plaintiff must prove (1) the name it seeks to protect is eligible for protection; (2) it is the senior user of the name; (3) there is a likelihood of confusion between its mark and that of the other user; and (4) the likelihood of confusion will cause irreparable injury for which there is no adequate legal remedy.[62]

The federal trademark infringement claim is analyzed at length above. Defendants have simply undertaken no effort to use Plaintiff's alleged mark or any mark that is confusingly similar to Plaintiff's alleged mark. Since Plaintiff must meet the same elements analyzed above to succeed on the state-law claim, and since Plaintiff cannot meet those elements, this claim fails as a matter of law.

### E.   Plaintiff's Unfair Competition Claim Fails as a Matter of Law.

Plaintiff's fifth claim is for alleged common law unfair competition under Texas law (page 16 of the Complaint). This kind of claim is "a general rubric under

---

[61]*AMX Corp v. Pilote Films*, 2007 WL 1695120, at *24 (N.D. Tex. 2007) (Fitzwater, J.), citing *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.,* 991 S.W.2d 484, 488 (Tex.App. – Fort Worth 1999, no pet.)

[62]*Id.*, citing *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 (Tex.App. – Austin 2001, pet. denied).

which fall all statutory and non-statutory causes of action arising out of dishonesty in industrial or commercial matters."[63] To succeed on this claim, Plaintiff "must show that the defendant committed an illegal act that interfered with the plaintiff's ability to conduct its business; the illegal act need not necessarily violate criminal law, but must at least be an independent tort."[64] Plaintiff must prove an independent substantive tort to succeed on a claim of unfair competition.[65]

As is shown above, all of Plaintiff's other substantive claims fail as a matter of law. Also, Plaintiff has not pled any other substantive tort claim that would support liability for alleged unfair competition. Plaintiff therefore has no "illegal act" to serve as a foundation for an unfair-competition claim. Plaintiff's allegations in support of this claim are, in essence, that the "goforit" mark has come to be exclusively associated with Plaintiff (which is patently untrue, as is shown by the hundreds of websites that incorporate "goforit" – see Footnote 32, above) and that Defendants have unlawfully used the mark (which, as shown above, is not true either). This claim simply has no factual or legal foundation, and fails as a matter of law.

## F.    Plaintiff's Claim for Punitive Damages Fails as a Matter of Law.

The Complaint includes a claim for punitive damages, but does not include any legal support for such a claim. The factual allegation stated in support of the

---

[63] *AMX Corp v. Pilote Films*, 2007 WL 1695120, at *23 (N.D. Tex. 2007) (Fitzwater, J.), quoting *Keane v. Fox Television Stations, Inc.,* 297 F.Supp.2d 921, 938 (S.D.Tex.2004).
[64] *Id.*
[65] *Id.*

claim is that "[w]ith full and actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result, Defendants have adopted the GOFORIT Mark as a subdomain . . . ." This is the sole basis for the claim, and it is simply not supported by the facts. Therefore, the claim for punitive damages fails as a matter of law.

### G.   Neither Scott Day nor Digimedia.com Management, Inc. Own any Domain Name at Issue.

Since Plaintiff's claims all relate to the ownership or registration or domain names, and since Scott Day and Digimedia.com Management, Inc. do not own any of the domain names or operate any of the websites at issue, there is clearly no viable claim against either of them in this suit. Even if the Court were to somehow find that the domain names or websites constitute or have resulted in a violation, that analysis would not apply to Scott Day individually or to Digimedia.com Management, Inc.

### IV.
### Conclusion

Defendants have simply not taken any action whatsoever to use Plaintiff's alleged mark. Perhaps when Plaintiff filed this suit, it was under the impression that Defendants had taken some action to establish "goforit" as a subdomain under Defendant's second-level domains. Even if Defendants had done that, Plaintiff's claims would fail. But given the facts as they are now known — that Defendants only used wildcard DNS on their sites and took no action to establish "goforit" as a

subdomain — Plaintiff's claims lack all reasonable support and fail as a matter of law.

Wherefore, Defendants respectfully request the Court to grant Defendants' Motion for Partial Summary Judgment in all respects, to render summary judgment in Defendants' favor dismissing all of Plaintiff's claims with prejudice, and to award Defendants all other relief they are entitled to receive.

Respectfully submitted,

___s/ Phillip L. Free, Jr._____
Mack J. Morgan, OBA#6397
Phillip L. Free, Jr., OBA #15765
Drew T. Palmer, OBA #21317
CROWE & DUNLEVY
20 N. Broadway, Suite 1800
Oklahoma City, OK  73102
Phone:  (405) 235-7700
mack.morgan@crowedunlevy.com
phil.free@crowedunlevy.com
drew.palmer@crowedunlevy.com


____s/ Michael L. Atchley_____
Michael L. Atchley
Texas State Bar No. 01397600
POPE, HARDWICKE, CHRISTIE, SCHELL, KELLY & RAY, LLP
901 Forth Worth Club Building
306 West 7th Street
Fort Worth, Texas 76106
Telephone: (817) 332-3245
Facsimile: (817) 877-4781
matchley@popehardwicke.com

ATTORNEYS FOR DEFENDANTS

## Certificate of Service

I certify that a copy of this document is being served on all counsel of record, through the Court's ECF system, on January 25, 2010.

                                   ___s/ Michael L. Atchley_____
                                   Michael L. Atchley