IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GOFORIT ENTERTAINMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DIGIMEDIA.COM, L.P., | § | No. 3:08-cv-2011-D |
| CYBERFUSION.COM, L.P., | § | |
| HAPPYDAYS, INC., | § | |
| DIGIMEDIA.COM MANAGEMENT, INC., | § | |
| and SCOTT DAY, | § | |
| | § | |
| Defendants. | § | |

## Declaration of Scott Day

I, Scott Day, hereby declare, depose, and state:

1. My name is Scott Day. I am over 21 years of age, have never been convicted of a felony, and am fully competent to make this sworn declaration. I have personal knowledge of all facts stated herein, and they are all true and correct.

2. I am the president of HappyDays, Inc. HappyDays, Inc. is an Oklahoma corporation. I own 100% of the outstanding shares of HappyDays, Inc.

3. I am the president of Digimedia.com Management, Inc. Digimedia.com Management, Inc. is a Texas corporation. I own 50% of the outstanding shares of Digimedia.com Management, Inc, and Eric Grant owns the other 50%.

4. Digimedia.com, L.P. is a Texas limited partnership. HappyDays, Inc. is a 49% limited partner of Digimedia.com, L.P., and Digimedia.com Management, Inc. is the

2% general partner of Digimedia.com, L.P. Reflex Publishing, Inc. (a Florida corporation) is the remaining 49% limited partner of Digimedia.com, L.P.

5. Cyberfusion, L.P. is a Texas limited partnership. HappyDays, Inc. is a 49% limited partner of Cyberfusion, L.P., and Digimedia.com Management, Inc. is the 2% general partner of Cyberfusion, L.P. Reflex Publishing, Inc. (a Florida corporation) is the remaining 49% limited partner of Cyberfusion, L.P.

6. I graduated from Oklahoma State University in 1994 with a degree in agricultural education and spent the next two years teaching school in Arnett, Oklahoma.

7. When my grandfather died, I quit teaching and moved home to Terrel, Oklahoma to help my dad with the family watermelon farm.

8. In the summer of 1996, I accompanied my father on a trip to south Texas. Along the way, we stopped into a computer store to get some help with my dad's computer. While in the store, I saw "the Internet" for the first time and was immediately struck by the potential business opportunities it presented.

9. After that, I wanted to expand the family watermelon business onto the Internet. I felt that an essential part of this plan was to register the domain name "watermelons.com." Later that summer, I convinced my father to purchase "watermelons.com" for the price of $3,000.00.

10. My initial business plan was to charge watermelon farmers a fee to build web pages at his "watermelons.com" website. One of the significant challenges I faced was a lack of technical skill in that I had never learned how to design or program a web page.

11. During the summer, I discovered what ultimately became a crucial piece of information in my business plan, that the people we bought "watermelons.com" domain name from, had acquired the domain name for only $100.00. At that moment, a kind of a light bulb went off, that if two watermelon farmers are willing to spend $3,000 on a domain name, really quality domain names might be extremely valuable business assets.

12. In the summer of 1997, I decided it was time to start a new business venture. I wanted to acquire "really good" domain names while they were still available. So, throughout the summer, I spent countless hours figuring out how to find and then acquire quality domain names.

13. During this process, I met several other people that were acquiring quality domain names. One of those people was Eric Grant, who eventually became my partner in Digimedia.com, L.P. We formed Digimedia.com, L.P., an Oklahoma limited partnership. This partnership included two 49% limited partners, Defendant HappyDays, Inc., an Oklahoma corporation, and Reflex Publishing, Inc., a Florida corporation. The remaining 2% partnership share was held by the general partner, Digimedia.com, Inc. Defendant HappyDays, Inc. is wholly owned by myself, and Reflex Publishing, Inc. is wholly owned by Eric Grant. Shares in Digimedia.com, Inc. were split 50:50 between myself and Eric.

14. Between 1997 and 1999, Digimedia.com, L.P. acquired approximately 1700 "high-quality" domain names. Almost all of Digimedia.com, L.P.'s domain names are made up of generic labels, such as "recipes.com", "webdesign.com", "chairs.com", and "dress.com". Digimedia.com, L.P.'s original business plan was to acquire, hold and then sell its domain names for a profit.

15. Sometime in late 2000 or early 2001, Digimedia.com, L.P. adjusted its business model to include the use of pay-per-click advertising (commonly referred to as "PPC"). Through PPC, Digimedia.com, L.P. generates revenue by allowing a third party (Yahoo!, Inc.) to provide advertisements on Digimedia.com, L.P.'s websites. When an internet user visits one of Digimedia.com, L.P.'s websites they are presented with a list of these advertisements. Each advertisement includes a hyperlink to the website of a third party. If a user clicks on one of those hyperlinks, they are directed to the third party website. In return, that third party pays Yahoo! a fee. Yahoo! in turn pays a percentage of that fee to Digimedia.com, L.P. This PPC business model has been incredibly successful for Digimedia.com, L.P., generating millions of dollars for the partnership over the past decade.

16. In October 2003, Defendant Happy Days, Inc. and Reflex Publishing, Inc. formed two new Texas entities: Defendant Digimedia.com, L.P. (a Texas limited partnership); and Defendant Digimedia.com Management, Inc. (a Texas corporation). The Oklahoma limited partnerships were merged into the newly formed Texas entities to form the corporate structure that exists today. At the same time, a new entity, Defendant Cyberfusion, L.P. (a Texas limited partnership), was formed. It ownership structure is identical to that of Digimedia.com, L.P.

17. Only second-level domain can be registered with generic top-level domains, i.e., registrants do not register specific third-level domains with generic top-level domains. A second-level domain is the portion of the domain name that immediately precedes the top-level domain. The top-level domains are such things as ".com," ".org," and ".gov." For

example, in the domain name "watermelons.com," the ".com" portion indicates the top-level domain. The "watermelons" portion indicates the second-level domain.

18.     The only domain names that any of the Defendants have registered are second-level domains (consisting of a top-level label and a second-level label).

19.     Generally speaking, entities cannot own or register — or acquire from a registrar like Godaddy.com — top-level domains; rather, they can own or register only second-level domains within a given top-level domain.

20.     The owner of a second-level domain can set up subdomains, such as a third-level domain, under the second-level domain. For example, "uscourts.gov" is a second-level domain, under which one can find the third-level domain "txnd.uscourts.gov." Entities do not and cannot register third-level domains.

21.     Instead of (or in addition to) the creation of specific subdomains under a second-level domain, a second-level domain can operate in conjunction with "wildcard DNS."

22.     When wildcard DNS is enabled, essentially anything typed as a subdomain will lead the user to the website of the second-level domain. For example, typing "fhkjfdhskdfjhskdf.bing.com" into an Internet browser will take the user to the bing.com website, as will typing "goforit.bing.com" or "digimedia.bing.com."

23.     Wildcard DNS is a common, allowable process used by numerous reputable companies.

24.     The two largest domain-name registrars — Godaddy.com and Network Solutions — enable wildcard DNS by default when someone registers a domain name through them.

25. Digimedia, Cyberfusion, and HappyDays utilize wildcard DNS on their websites. For example, typing "gibberish.recipes.com" into an Internet browser will take the user to the "recipes.com" website.

26. None of the defendants have ever set up "GOFORIT" as a subdomain on any websites.

27. None of the hyperlinks on the websites of Digimedia, Cyberfusion, and HappyDays include the term "GOFORIT."

28. Defendants have never used the term "GOFORIT" in any advertising or anywhere else on the Defendants' websites.

29. None of the Defendants have everutilized wildcard DNS with any intent to harm the Plaintiff or to create any confusion with respect to the Plaintiff. None of the Defendants were even aware of the Plaintiff prior to the Florica lawsuit being filed by Plaintiff.

30. Before Goforit Entertainment, LLC sued me in 2006, I did not know they existed. In addition, prior to be sued, I had never visited the website located at "goforit.com". The Florida lawsuit involved essentially the same claims involved in the present lawsuit.

31. For the past ten years, the Defendants have utilized their domain names to offer pay-per-click advertising.

32. None of the Defendants have ever offered to sell any of their domain names to Goforit Entertainment, LLC or Russell Tewksbury.

33. None of the Defendants have ever used any false or misleading contact information to register their domain names.

34. I first learned about wildcard DNS in 2001. Since 2001, each of the Defendants' has used wildcard DNS in connection with its domain names. Because wildcard DNS is an common, allowable process used by numerous reputable companies, the Defendants believed (and still believe) that its use was a fair use or otherwise lawful. For example, I am aware that Microsoft uses wildcard DNS with its "bing.com" domain name, Nascar with its "nascar.com" domain name, The Gap with its "gap.com" domain name, and the band U2 at its "U2.com" domain name.

35. In addition, I know that several registrars enable wildcard DNS by default when a domain name is first registered. In particular, the two largest registrars, Godaddy.com and Network Solutions, enable wildcard DNS by default when they register domain names. On January 21, 2010, I registered the domain name "goodgenericdomainname.com" with Godaddy.com and "verygenericdomain.com" with Network Solutions. By default, both Godaddy.com and Network Solutions enabled wildcard DNS with both of these domains.

36. Digimedia has never expressly setup a "goforit" subdomain on any of its domain names.

37. After Goforit sued Digimedia in Florida, I asked Dan Walton to exclude the terms "goforit" and "go4it" from the Defendants' wildcard DNS. Since this exclusion, any internet user that uses "goforit" or "go4it" as the third-level domain of any of Digimedia's domain names, that internet user will receive an error message.

38. None of the hyperlinks on any of Digimedia's webpages include the term "goforit."

39. Digimedia has never used the term "goforit" in its advertising.

40. I do not personally own any of the domain names or websites involved in the present lawsuit. I am a shareholder and officer of HappyDays, Inc. and Digimedia.com Management, Inc.

41. Digimedia.com Management, Inc. does not own any of the domain names or operate any of the websites at issue in the present lawsuit. It is simply a minority general partner in Digimedia and Cyberfusion.

I declare under penalty of perjury that the foregoing is true and correct. Dated January 25, 2010

Scott Day