**I**N THE **U**NITED **S**TATES **D**ISTRICT **C**OURT
**FOR THE N**ORTHERN **D**ISTRICT OF **T**EXAS
**D**ALLAS **D**IVISION

| | |
|---|---|
| **G**O**F**OR**I**T **E**NTERTAINMENT, LLC, § | |
| § | |
|    **Plaintiff,** § | |
| § | |
| v. § | |
| § | |
| **D**IGIMEDIA.COM, L.P., § | No. 3:08-cv-2011-D |
| **C**YBERFUSION.COM, L.P., § | |
| **H**APPY**D**AYS, **I**NC., § | |
| **D**IGIMEDIA.COM **M**ANAGEMENT, **I**NC., § | |
| and **S**COTT **D**AY, § | |
| § | |
|    **Defendants.** § | |

**Defendants' Reply in Support
of their Motion for Partial Summary Judgment**

Mack J. Morgan, OBA#6397
Phillip L. Free, Jr., OBA #15765
Drew T. Palmer, OBA #21317
CROWE & DUNLEVY
20 N. Broadway, Suite 1800
Oklahoma City, OK 73102
Phone: (405) 235-7700
mack.morgan@crowedunlevy.com
phil.free@crowedunlevy.com
drew.palmer@crowedunlevy.com

Michael L. Atchley
Texas State Bar No. 01397600
POPE, HARDWICKE, CHRISTIE,
SCHELL, KELLY & RAY, LLP
901 Forth Worth Club Building
306 West 7th Street
Fort Worth, Texas 76106
Telephone: (817) 332-3245
Facsimile: (817) 877-4781
matchley@popehardwicke.com

**Table of Contents**

Table of Contents ...................................................................................................................... ii

Table of Authorities ................................................................................................................. iii

Defendants' Reply in Support of their Motion for Partial Summary Judgment ......................... 1

Summary ..................................................................................................................................... 1

Undisputed Facts ........................................................................................................................ 2

Argument .................................................................................................................................... 3

    I.  Plaintiff's Arguments and Evidence Do Not Show Any Genuine Issue Of Material Fact ..................................................................................................... 3

        A.  Plaintiff's Cybersquatting Arguments Begin With A Fundamental Misreading of The ACPA. ............................................................. 5

        B.  Plaintiff Does Not Refute That Defendants Have Never Registered A Domain Name That Is Identical Or Confusingly Similar To Its GOFORIT Mark ....................................... 6

        C.  Plaintiff Does Not Refute That Defendants Have Never Set Up ........................................................................................................................ 9

        D.  Defendants' Log Files Do Not Show Use Of The GOFORIT Mark .................................................................................................. 10

        E.  Defendants' Screen Shots Do Not Show Use Of The GOFORIT Mark .................................................................................................. 11

        F.  All of Plaintiff's Claims Fail as a Matter of Law. ................................... 12

    II.  Plaintiff Has Not Stated A Claim Against Scott Day Or Digimedia.com Management, Inc. ................................................................... 12

    III. Conclusion. ............................................................................................................ 14

Signature of Counsel ................................................................................................................ 15

Certificate of Service ............................................................................................................... 16

## Table of Authorities

Page

Cases

*DDH Aviation v. Holly*, 2005 WL 770595 (N.D. Tex. 2005) ................................................. 13

*Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004) ................ 14

*Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012 (10th Cir. 1990) ..... 13

*House v. 22 Texas Services, Inc.*, 60 F.Supp.2d 602 (S.D. Tex. 1999) ................................ 13


Statutes

15 U.S.C. § 1125 ........................................................................................................ 5, 6, 7, 12

15 U.S.C. § 1127 ............................................................................................................... 7


Other Authorities

LR 56.5 ............................................................................................................................... 1

LR 7.1 ................................................................................................................................. 1

S. Rep. No. 106-140 (1999) (located at 1999 WL 594571) ................................................... 9


## Table of Authorities

Page

Cases

*DDH Aviation v. Holly*, 2005 WL 770595 (N.D. Tex. 2005) ................................................. 13

*Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004) ................ 14

*Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012 (10th Cir. 1990) ..... 13

*House v. 22 Texas Services, Inc.*, 60 F.Supp.2d 602 (S.D. Tex. 1999) ................................ 13


Statutes

15 U.S.C. § 1125 ........................................................................................................ 5, 6, 7, 12

15 U.S.C. § 1127 ............................................................................................................... 7


Other Authorities

LR 56.5 ............................................................................................................................... 1

LR 7.1 ................................................................................................................................. 1

S. Rep. No. 106-140 (1999) (located at 1999 WL 594571) ................................................... 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GOFORIT ENTERTAINMENT, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DIGIMEDIA.COM, L.P., | § | No. 3:08-cv-2011-D |
| CYBERFUSION.COM, L.P., | § | |
| HAPPYDAYS, INC., | § | |
| DIGIMEDIA.COM MANAGEMENT, INC., | § | |
| and SCOTT DAY, | § | |
| | § | |
| Defendants. | § | |

### Defendants' Reply in Support
### of their Motion for Partial Summary Judgment

Defendants respectfully file this Reply in Support of their Motion for Partial Summary Judgment (Doc #77) in accordance with LR 7.1(f) and 56.5(b) and the Court's Order of March 11, 2010.

### Summary

This case presents the issue of whether the use of wildcard DNS constitutes cybersquatting or is otherwise a violation of the Lanham Act. It is undisputed that Defendants have not taken any action to intentionally use or incorporate the particular term "goforit" in a domain name or anything else. Plaintiff's arguments are all based on the premise that the use of wildcard DNS is, by itself, a violation of the Lanham Act.[1] Plaintiff cites no authority for this position, because no such authority exists.

---

[1] Plaintiff's Response Brief, page 1 (identifying principal issue as "whether Defendants 'used' Plaintiff's protected mark in connection with the Internet services they provide by utilizing wildcard [DNS] in combination with their registered domain names").

1

Further, if Plaintiff's position were valid, then every trademark owner would have a claim against not only the Defendants, but also every domain-name owner that utilizes this common and "allowable" feature of the Internet, including the Dallas Bar Association, Microsoft, The Gap, Waffle House, and NASCAR. Plaintiff's position is even more dubious in view of the fact that Russell Tewksbury — Plaintiff's sole principal, who puts all of Plaintiff's earnings directly into his own bank account[2] — uses or has enabled wildcard DNS in connection with hundreds of domain names.[3]

Considering the novelty of Plaintiff's claims, it is not surprising that Plaintiff fails to cite any authority for its position that the use of wildcard DNS is a violation of the Lanham Act. Without sufficient facts or law to support its claims, Plaintiff's response is nothing more than smoke and mirrors. While Plaintiff's arguments are certainly voluminous, they are unpersuasive. Accordingly, the Court should grant Defendants' Motion for Partial Summary Judgment.

## Undisputed Facts

Plaintiff does not object to any of Defendants' summary-judgment evidence and does not substantively dispute any of Defendant's undisputed facts (although Plaintiff does add some editorial comments to a few of Defendant's undisputed facts). By way of summary, Plaintiff admits (or at least does not dispute) these facts:

> (1) Defendants have never purposefully set up "goforit" as a subdomain on any websites (para. 12 of Defendants' Brief);
>
> (2) When wildcard DNS is enabled, essentially anything typed as a subdomain will lead the user to the website of the second-level domain (para. 9 of Defendants' Brief);

---

[2] See Plaintiff's Response Brief at page 7 (under "Plaintiff's Response" to some of Defendants' undisputed facts).

[3] *see* Defendants' Response to Plaintiff's Objections to Magistrate's Order (Doc. #85), at page 6, footnotes 25-27.

(3) wildcard DNS is a common, allowable process used by numerous reputable companies (para. 10 of Defendants' Brief);

(4) Defendants have never used the term "goforit" in any advertising or anywhere else on Defendants' websites (para. 13 of Defendants' Brief);

(5) There are hundreds of websites that do incorporate "goforit" or a derivative thereof in the domain name, but those sites are not associated with Defendants (para. 14 of Defendants' Brief);

(6) Defendants had never heard of GoforIt or its website until 2006, when Plaintiff filed a lawsuit against Defendants in Florida (para. 16 of Defendants' Brief);

(7) In 2006, after receiving Plaintiff's Florida lawsuit, Defendants blocked "goforit" and "go4it" from the wildcard DNS function of their websites, and those terms have been so excluded ever since (para. 18 of Defendants' Brief);

The essential facts are not in dispute in this case. The issue is truly a legal one: whether the use of wildcard DNS constitutes cybersquatting or gives rise to any of the other causes of action Plaintiff is bringing. Plaintiff does not have any legal authority for the proposition that using wildcard DNS is a violation of anything. Defendants' Motion should be granted.

## Argument

### I. PLAINTIFF'S ARGUMENTS AND EVIDENCE DO NOT SHOW ANY GENUINE ISSUE OF MATERIAL FACT.

Plaintiff's Response Brief does not refute the undisputed fact that the Defendants have not affirmatively used the GOFORIT mark. There is absolutely no evidence or argument that Defendants have at any time set about to use the term "goforit." Plaintiff's argument is that Defendants have used wildcard DNS and therefore have "used" "goforit." Wildcard DNS is not some mysterious trick or artifice — it is commonly used (see Defendants' Appendix page 32), and Plaintiff's own expert testified that it is allowed (see Defendants' Appendix page 243).

3

Plaintiff's argument is not that Defendants have directly used the GOFORIT mark, but that any use of the term "GOFORIT" by unrelated third-party Internet users should be imputed to the Defendants. Of course, Plaintiff cites no authority for its position, because no such authority exists. In an attempt to disguise its lack of evidence, Plaintiff repeatedly states that Defendants have "used" the GOFORIT mark and then cites to various documents that show third-party use of the mark. When the evidence is reviewed, it is clear that three crucial facts are undisputed:

> 1. Defendants' domain names do not contain any term that is identical or confusingly similar to the GOFORIT mark;
>
> 2. Defendants have never set up a subdomain that is identical or confusingly similar to the GOFORIT mark; and
>
> 3. The only evidence of "use" of the GOFORIT mark is by unrelated third-party Internet users.

Because there is no evidence that the Defendants have ever used the GOFORIT mark, as a subdomain or otherwise, Defendants are entitled to Summary Judgment on all of Plaintiff's claims.

Plaintiff responds to these three undisputed facts with two basic arguments. First, Plaintiff argues that its cybersquatting claim should survive summary judgment because the Court should expand the definition of "domain name" in the ACPA to include Defendants' use of wildcard DNS. As discussed below, Plaintiff's argument is not supported by the text of the ACPA, or by the legislative history. Second, Plaintiff argues that its other claims of trademark infringement, false advertising, and unfair competition should survive summary judgment because it has evidence that Defendants have actually "used" the GOFORIT mark. Upon close inspection, however, Plaintiff's evidence of "use" is nothing more than excerpts from Defendants' log files showing that third party Internet

4

users have attempted to access Defendants' domain names by using the term "goforit" as a third or fourth-level domain. (Interestingly, of the 247,958 log files produced by Defendants, Plaintiff's counsel identifies only 7 log files that contain the term "goforit.") Clearly, the few entries that Plaintiff identified are *de minimis* and can be explained at least in part as arising from the investigations of the parties and their counsel. Indeed, one of the entries even includes the first name of one of Defendants' attorneys.[4]

As explained below, Plaintiff's arguments do not refute the three principal undisputed material facts underlying Defendants' Partial Motion for Summary Judgment.

### A.  PLAINTIFF'S CYBERSQUATTING ARGUMENTS BEGIN WITH A FUNDAMENTAL MISREADING OF THE ACPA.

Plaintiff acknowledges that the elements of its primary claim (for cyberpiracy) are stated at 15 U.S.C. § 1125(d)(1)(A) (see page 21 of Plaintiff's Response Brief), but Plaintiff does not correctly list the elements set forth in the statute. Specifically, Plaintiff claims that it can succeed by showing that "Defendants registered, trafficked in, or used the **domain names** with the bad faith intent to profit from **them**."[5] In other words, Plaintiff thinks it can succeed simply by showing that Defendants intended to profit from the domain names. But Plaintiff is misreading the statute, which requires a showing that Defendants had a specific bad-faith intent to profit from the use of Plaintiff's particular mark. Section 1125(d)(1)(A) states that a person shall be liable in a civil action by the owner of a mark if the person "(i) has a bad faith ***intent to profit from that mark*** . . . ." 15 U.S.C. § 1125(d)(1)(A) (emphasis added). This is an essential element of Plaintiff's claim — Plaintiff must show that Defendants had a specific bad-faith intent to profit from the use

---

[4] *see* Pl. App. in Support of Resp. to Defs. Motion for Partial Summary Judgment, Doc. 91, page 112 (Mar. 1, 2010) (listing domain name: "http://goforit.**drew**.chairs.com")(emphasis added).

[5] Plaintiff's Response Brief, page 21, at the top of the page (emphasis added).

of the particular term "goforit" — and Plaintiff has no evidence with which to satisfy this element. Plaintiff's misreading of the statute would find bad faith intent from any for-profit domain name owner solely on the basis that they intended to generate a profit from the use of their own domain name. The statute does not support such a result.

Without a showing that Defendants had a specific, bad-faith intent to profit from the "goforit" mark, Plaintiff's claim fails as a matter of law. Plaintiff spends a considerable portion of its Brief analyzing whether some alleged intent meets the statute's factors regarding "bad faith," but Plaintiff does not show (because it cannot) that Defendants ever specifically intended to profit from the GOFORIT mark. It is undisputed that Defendants (1) had never heard of "GoForIt" when they set up wildcard DNS, (2) have never set up a subdomain targeting the GOFORIT mark, and (3) that as soon as Defendants heard (through the Florida lawsuit) that Plaintiff had an issue with Defendants' use of wildcard DNS, they blocked "goforit" from their wildcard DNS. Since Plaintiff cannot show that Defendants had any intent to profit from the specific mark at issue, the analysis never gets to whether any such intent was in bad faith or not — there simply is no "intent" to analyze.

After disregarding 15 U.S.C. § 1125(d)(1)(A)(i)'s requirement that Plaintiff show an intent to profit from the GOFORIT mark, Plaintiff's Brief moves directly on to subsection (d)(1)(A)(ii) and argues about the meaning of "domain name." But without a showing of intent, as required by subsection (i), the analysis should never advance to subsection (ii). In any event, Plaintiff's analysis of this issue is also incorrect.

### B. PLAINTIFF DOES NOT REFUTE THAT DEFENDANTS HAVE NEVER REGISTERED A DOMAIN NAME THAT IS IDENTICAL OR CONFUSINGLY SIMILAR TO ITS GOFORIT MARK.

Even if Plaintiff had evidence to show a bad faith intent to profit from the particular term "goforit" (which it does not), Plaintiff would still be required to prove that

Defendants "register[ed], traffic[ked] in, or use[d] a domain name" that was "identical or confusingly similar to that mark." 15 U.S.C. §1125(d)(1)(A)(ii)(I). Plaintiff agrees that none of the domain names registered by Defendants (as listed in the Complaint) include the term "goforit." Nevertheless, in a desperate attempt to show that Defendants have "used" a "domain name" that includes the "goforit" mark, Plaintiff is left to argue that the use of wildcard DNS itself creates new "domain names." Plaintiff's reasoning appears to be that, if an Internet user types, for example, "www.goforit.dallasbar.org," and is routed to the Dallas Bar Association website, then "www.goforit.dallasbar.org" somehow automatically falls under the ACPA definition of "domain name." This reasoning has absolutely no support in the Act, and would mean that any site using wildcard DNS (and the Dallas Bar website is only one of many, many examples) is automatically cybersquatting as to every trademark in the world. This is not only absurd, it would create sweeping liability despite having no support in the statute or case law.

The ACPA defines "domain name," and therefore this issue is one of statutory construction that is proper for disposition on summary judgment. The Act's definition (at 15 U.S.C. § 1127), states in part:

> In the construction of this chapter, unless the contrary is plainly apparent from the context …
>
> The term "domain name" means any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet.

In short, then, a "domain name" is something that is "registered with or assigned by a domain name registrar." Wildcard DNS does not fit within this definition. A website will typically have a domain name that is registered with or assigned by a domain name registry

7

(for example, "dallasbar.org"). With wildcard DNS, typing something before the domain name, e.g., "**www.fhjfhjfhj**.dallasbar.org" will lead the user to the website notwithstanding the extra characters. But the extra characters (that is, the "www.fhjfhjfhj") are not "registered with or assigned by a domain name registrar," and therefore do not meet the definition of a "domain name."

Plaintiff focuses quite a bit of energy on whether there is a difference between "registered with" or "assigned by," but the simple fact is that the extra characters included in wildcard DNS are *neither* "registered with" *nor* "assigned by" a domain name registrar, so any difference in the meaning of the terms (and there appears to be no meaningful difference) is inapplicable here.

Nothing within the plain text of the statute indicates that Defendants' use of wildcard DNS falls within the definition of "domain name." Plaintiff's argument that "assigned by" has a different meaning from "registered with" is inconsistent with the remainder of the ACPA which uses the terms "registered" and "assigned" interchangeably. Finally, to the extent that there is any ambiguity in the definition of "domain name," the legislative history clearly indicates that the congressional intent of the ACPA was to define "domain name" narrowly to the actual text that is issued by the registrar:

> *Definition of ''domain name''*
>
> The bill, as amended, provides a narrow definition of the term ''domain name'' in order to tailor the bill's reach narrowly to the problem sought to be addressed. Thus, the term ''domain name'' describes any alphanumeric designation which is registered with or assigned by any domain name registrar, domain name registry, or other domain name registration authority as part of an electronic address on the Internet. **This definition essentially covers the second-level domain names assigned by domain name registration authorities (i.e., the name located immediately to the left of the ''.com,'' ''.net'', ''.edu,'' and ''.org'' generic top level domains), but is technology neutral enough to accommodate names other than second-level domains that are actually registered with domain name registration authorities, as may be the case should Internet domain name registrars begin to issue third or fourth level domains.** The limited nature of the definition is important in that it *excludes such things as screen names, file names, and other identifiers not assigned by a domain name registrar or registry*, which have little to do with cybersquatting in practice.[6]

Plaintiff's argument that something like "www.goforit.dallasbar.org" — which is not registered with or assigned by a domain name registry — is a "domain name" under the statute simply has no support in the law. Plaintiff simply cannot meet the elements of a cyberpiracy claim as a matter of law.

    C.    **PLAINTIFF DOES NOT REFUTE THAT DEFENDANTS HAVE NEVER SET UP "GOFORIT" AS A SUBDOMAIN.**

In their Motion for Partial Summary Judgment, the Defendants offered Scott Day's declaration in which he declared under penalty of perjury that "[n]one of the defendants have ever set up "GOFORIT" as a subdomain."[7] Mr. Day's testimony is supported by the expert report of Jeffrey Bedser, where he stated, "[n]one of the Defendants use the term "goforit" in their DNS records."[8] Further, plaintiff does not dispute that Defendants have

---

[6] S. Rep. No. 106-140 (1999), under the heading "Definition of 'Domain Name'," located at 1999 WL 594571, at *10 (emphasis added).

[7] Defendants' Appendix at App. 6.

[8] Expert Report of Jefferey Bedser, page 11 (Defendants' Appendix, at App. 21).

9

not used "goforit" as a subdomain. Accordingly, the undisputed fact remains that the Defendants have never set up a "GOFORIT" subdomain.

### D.  DEFENDANTS' LOG FILES DO NOT SHOW USE OF THE GOFORIT MARK.

Even if Plaintiff could prove a bad faith intent to profit from the particular phrase "goforit" (which it cannot) and if Plaintiff could prove that a "domain name" as defined by the Act had been used in a manner proscribed by the Act (which it cannot), Plaintiff has no evidence to show that *Defendants* used or trafficked in such a domain name. Plaintiff's argument relies on its allegation that third-party Internet users typed in some characters that led them to Defendants' sites, but this does not show that Defendants themselves used a "domain name."

Plaintiff alleges that Defendants' log files show that Defendants have "used" the Goforit mark.[9] But this reliance on Defendants' log files is misplaced. The log files show IP addresses and other information regarding third-party users who may have accessed Defendants' websites; they do not represent any actions taken by Defendants themselves. Plaintiff mischaracterizes the appearance of the term "goforit" in Defendants' log files as Defendants' "use" of the GOFORIT trademark.

If the appearance of the term "goforit" in Defendants' log files was held to constitute evidence of Defendants' use of the term, it would create a ridiculous situation in which a domain name owner could be found liable for cybersquatting or trademark infringement because an unrelated third-party Internet user attempted to access their website by using a particular term as a third or fourth-level domain name. For example,

---

[9] Pl. Response Brief, page 2 ("Defendants' log files. . . . demonstrates Defendants' use of the Goforit Mark")(internal citation omitted); *Id.* at page 12 ("Defendants' server log files show that 'Goforit' has been used multiple times in conjunction with Defendants' registered domain names.")

Case 3:08-cv-02011-D   Document 97   Filed 03/19/10   Page 14 of 19   PageID 2034

under the Plaintiff's theory, if an Internet user types in "www.goforit.dallasbar.org" into the address bar of their web browser, the Dallas Bar Association would be deemed to be "using" the "goforit" mark and would be allegedly liable for cybersquatting and trademark infringement. This would be an absurd result as to the Dallas Bar Association, and it would be absurd as to Defendants. Plaintiff simply has no evidence to show that Defendants have undertaken to "use" the term "goforit." Their cyberpiracy claim fails as a matter of law.

### E. DEFENDANTS' SCREENSHOTS DO NOT SHOW USE OF THE GOFORIT MARK.

Plaintiff also references some alleged screenshots attached as exhibits to its Complaint as a response to Defendants' argument that they have never used the GOFOIRT mark, as a subdomain or otherwise.[10] As an initial matter, Defendants note that Plaintiff has failed to establish the admissibility of any of its "screenshots," and Defendants therefore object to them and moves that they be stricken from the summary-judgment record. Indeed, Defendants' expert has demonstrated that such screenshots could be easily faked, and that there is no indication of when or how the alleged screenshots were created.[11] Even if the screenshots were admissible, they do not demonstrate any use of the GOFORIT mark by Defendants. Instead, like Defendants' log files, they simply record what a third-party Internet user typed into the address bar of the browser.[12] Accordingly, these screenshots are not evidence of Defendants' use of the GOFORIT trademark, and Plaintiff's claim fails as a matter of law.

---

[10] *See* Plaintiff's Response Brief, pages 5, 6, 11.

[11] *See* Expert Report of Jeffery Bedser, at Defendants' Appendix pages 17-18 (showing the content of the website of Best Buy in a browser, with the domain name "www.cnn.com").

[12] *See* Plaintiff's Response Brief, page 11, para. h. ("Screenshots attached to Plaintiff's Original Complaint demonstrate that **when a user enters <http://goforit.com.org/> into the web browser**, the user is directed to Defendants' website com.org")(emphasis added).

11

### F.  ALL OF PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.

The above analysis shows that Plaintiff's cyberpiracy claim under 15 U.S.C. § 1125(d) fails as a matter of law. Plaintiff's other claims also fail. As is shown in Defendant's Brief, Plaintiff's federal service mark claim requires a showing that (among other things) Defendants have "used" Plaintiff's alleged mark (see page 22 of Defendant's Brief). Plaintiff has no evidence to show that Defendants have used Plaintiff's alleged mark. Plaintiff's false-designation claim requires proof that (among other things) Defendants made a false statement of fact about their service (see page 23 of Defendant's Brief). Plaintiff has no evidence that Defendants have made any such false statement, or that Defendants ever made any affirmative statement to mislead anyone about themselves or "goforit." Plaintiff's state-law trademark infringement claim, which is subject to the same elements as its federal trademark infringement claim, fails because, again, there is no evidence that Defendants used Plaintiff's alleged mark (see Defendant's brief, page 24). Plaintiff's unfair-competition claim fails because there is no illegal act on which to found such a claim (see Defendant's Brief, page 25) and because Plaintiff has stated that "GoForIt is not a competitor of Defendants."[13]

### II. PLAINTIFF HAS NOT STATED A CLAIM AGAINST SCOTT DAY OR DIGIMEDIA.COM MANAGEMENT, INC.

Plaintiff has not alleged any facts that state a claim against Defendants Scott Day or Digimedia.com Management, Inc. While Plaintiff has identified particular domain names and websites operated by the other Defendants, Plaintiff has not identified any domain names or websites operated by Scott Day or Digimedia.com Management, Inc. Indeed, Plaintiff does not even respond to Defendants' argument that there are no genuine issues of

---

[13] Plaintiff's Objections to Magistrate's Order (Doc. #80), at page 4.

12

material fact as to Plaintiff's claims against Digimedia.com Management, Inc. Accordingly, the Court need look no further than Defendants' Motion for Partial Summary Judgment to dismiss all claims against Digimedia.com Management, Inc.

Plaintiff admits that it has no independent theory of liability against Scott Day, but it argues that under an "alter-ego" theory of liability he should be held personally liable for claims against the corporate defendants. "Federal courts look to the law of the state of incorporation to determine whether the corporate entity should be disregarded."[14] As HappyDays, Inc. is an Oklahoma corporation, Oklahoma law applies to determine whether HappyDays, Inc.'s corporate form should be disregarded.

"[U]nder Oklahoma law, a corporation may be deemed to be a mere instrumentality of an individual if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham."[15] Plaintiff has not alleged or introduced any evidence that creates a genuine issue of material fact under any of these grounds for disregarding the corporate fiction. Instead, Plaintiff argues that "Scott Day has been and remains the operating force behind Defendants' registration of Top Level domain names," that he "makes the major decisions for Cyberfusion," and that he "takes money from the HappyDays, Inc. account for personal expenses whenever needed." None of these allegations, if presumed to be true, state a sufficient basis for piercing the corporate veil of HappyDays, Inc.

---

[14] *DDH Aviation v. Holly*, 2005 WL 770595, *6 (2005)(J. Fitzwater)(*citing House v. 22 Texas Services, Inc.*, 60 F.Supp.2d 602, 609 (S.D. Tex. 1999)).

[15] *Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1018 (10th Cir. 1990).

As the president of HappyDays, Inc. and Digimedia.com Management, Inc., Scott Day is not only entitled to make decisions for the defendants, but is obligated to do so. Moreover, as the 100% owner of HappyDays, Inc., Scott Day has a right to profit from his investment in the company. Plaintiff has cited no authority, has provided no evidence, and has failed to provide any coherent argument as to why the Court should consider Scott Day's management of the corporate Defendants illegal, unlawful, fraudulent or wrongful in any way.[16] Accordingly, the Court should dismiss all claims against Scott Day.

### III. CONCLUSION.

Wherefore, Defendants respectfully request the Court to grant their Motion for Partial Summary Judgment in all respects.

---

[16] Plaintiff cites *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004) for the proposition that Plaintiff "has overcome the presumption of corporate separateness" **for the purpose of asserting personal jurisdiction**, an issue not before the court.

Respectfully submitted, ,

**s/ Drew T. Palmer**

**Mack J. Morgan III**, OBA #6397
mark.morgan@crowedunlevy.com
**Phillip Free Jr.**, OBA #15765
phil.free@crowedunlevy.com
**Drew T. Palmer**, OBA # 21317
drew.palmer@crowedunlevy.com

**Crowe & Dunlevy**
**A Professional Corporation**
20 North Broadway, Suite 1800
Oklahoma City, OK 73102-8273
Telephone: (405) 235-7700
Facsimile: (405) 239-6651

and

**Michael L. Atchley**
Texas State Bar No. 01397600
matchley@popehardwicke.com

**Pope, Hardwicke, Christie, Schell, Kelly & Ray, LLP**
901 Fort Worth Club Building
306 West 7th Street
Fort Worth, Texas 76102
Telephone: (817) 332-3245
Facsimile: (817) 877-4781

**Attorneys for Defendants Digimedia, L.P., Digimedia.com Management, Inc., Cyberfusion, L.P., HappyDays, Inc., and Scott Day**

## CERTIFICATE OF SERVICE

I certify that a copy of this document is being server on all counsel of record, through the Court's ECF system, on March 19, 2010.

                                              s/ Drew T. Palmer
                                              Drew T. Palmer