**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **GOFORIT ENTERTAINMENT, LLC,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **VS.** | ) | **Case No. 3:08-cv-02011-D** |
| | ) | |
| **DIGIMEDIA.COM L.P.,** | ) | |
| **CYBERFUSION.COM L.P.,** | ) | |
| **HAPPYDAYS, INC.** | ) | |
| **DIGIMEDIA.COM MANAGEMENT,** | ) | |
| **INC. and SCOTT DAY,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

**PLAINTIFF GOFORIT ENTERTAINMENT, LLC'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION AND SUMMARY

Defendants' sole basis for their tortious interference and reverse domain name hijacking claims is GoForIt's ("GFI") letter sent to Defendants' domain name registrar, Tucows, Inc. ("Tucows") requesting a registration lock on Defendants' infringing domains that are at issue in this suit (the "Locked Domains"). Defendants allege that due to GFI's letter (the "Tucows Letter"), Defendants were prevented from changing the administrative data associated with their domain names, including the ability to transfer or sell the domain names for almost seven months. Defendants' tortious interference claim fails for several reasons, any one of which warrants granting GFI's motion for summary judgment.

First, GFI's efforts to protect its trademarks by requesting a registration lock are protected by the *Noerr-Pennington* Doctrine. Under that doctrine, sending a letter to Defendants' domain name registrar is incident to pending litigation and cannot give rise to

liability.  The very narrow "sham exception" to the *Noerr-Pennington* doctrine does not apply to the facts of this case as Defendants have no grounds to assert that GFI's underlying claims are "objectively baseless."

Second, Defendants' tortious interference claim is barred in law and fact because Defendants had previously consented to registration locks in their agreement with Tucows. Defendants cannot label this action as tortious as they actually agreed to such a procedure in the event of a domain name dispute.  Moreover, Defendants' claim fails as GFI was legally justified in protecting its own trademark.  Lastly, Defendants have failed to prove any damages, much less any damages proximately caused by GFI.  For these reasons, GFI respectfully requests that the court grant its Motion for Summary Judgment on Defendants' counterclaims.

## II.     ARGUMENTS AND AUTHORITIES

### A.     The Tortious Interference Claim Fails As A Matter of Law and Fact.

Defendants assert tortious interference with contract against GFI.  In essence, their claim is that the Tucows Letter forced the domain name registrar to lock or otherwise suspend activity to Defendants' domain names.  And, "[a]s a result of the registration lock, approximately 295 of the Defendants' domain names were locked.  Due to this lock, the Defendants were prevented from changing the administrative data associated with their domain names, including the ability to transfer or sell the domain names for almost seven months."[1]

Defendants neglected to produce the Tucows Master Services Agreement until their response brief.   Remarkably, they still have not explained why this document was not produced in response to GFI's discovery request.  Nevertheless, their claims are still deficient for multiple reasons.

---

[1] Dkt. No. 123 at 3.

2

First, Defendants waived their right to dispute Tucow's registration lock when they entered into the Tucows Master Services Agreement.    As a condition of registering their domains with Tucows, Defendants agreed that domains could be suspended if a domain name dispute occurred with a third party.  The agreement clearly states:

> **14.3.**  In addition to the foregoing termination rights, if Tucows, in its reasonable discretion, determines that Customer has breached any provision of this Agreement, is in violation of any Tucows, ICANN or Registry policy or regulation as amended from time to time, has failed to provide adequate support to Users, or is engaging in conduct that breaches or may put Tucows in breach of any law or regulation, Tucows may suspend Customer's or Customer's Users' access to any or all of the services described in this Agreement, pending the cure of such breach or violation, or change of such conduct, to Tucows' satisfaction acting reasonably.[2]

Where a domain name registrant agrees to submit to a domain name dispute resolution procedure, the registrant is precluded from bringing tort claims based on the implementation of that procedure.[3]    This holding is also consistent with Texas law.[4]   There is no dispute that the Defendants entered into the Tucows Master Services Agreement.   Under the plain terms of that agreement, Tucows was entitled to lock the domains.   Defendants, therefore, consented to the very actions they now claim as tortious.   They cannot use the suspension of their domains as the basis for their interference claims.    Accordingly, Defendants' counterclaim of tortious interference is legally barred and summary judgment is appropriate.

Second, even assuming the Defendants' allegations were true, the tortious interference claim still fails because GFI was entitled to protect its own rights as long as it did so in good faith.  A defendant is justified in interfering with a plaintiff's contract if he exercises (1) his own

---

[2] Def. App. 227 – 228 (emphasis added).

[3] *See Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp.2d 385, 394 (E.D. Va. 2002)(holding that "an agreement to participate in a proceeding cannot render initiation of that proceeding a tort claim.").

[4] *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)("Ordinarily, merely inducing a contract obligor to do what it has the right to do is not actionable interference.").

legal rights or (2) a good faith claim to a colorable legal right, even if that claim ultimately proves to be mistaken.[5]

There is no dispute that GFI is the owner of a federally registered trademark. Nor is there any dispute that the GFI Mark was used as a part of Defendants' subdomains through the Wildcard dns.[6]   This presents clear evidence that GFI acted in good faith to protect its mark, just as countless other trademark owners did against Defendants.  Because GFI was legally justified in protecting its trademark, the Tucows Letter cannot be the basis of an interference claim.

Third, Defendants still have shown no facts supporting a claim for damages, an essential element of their counterclaim. Defendants have not identified a contract that was breached due to the locking of their domain names. Moreover, even if the sale of a domain was delayed, Defendants have shown no evidence that the delay caused a reduction in value of the sale.  If Defendants have or had contracts to sell domains, they must present evidence that purchasers refused to buy the domains or, at a minimum, that the purchasers bought the domain for less than the original price.

Fourth, to prove an action for tortious interference, the plaintiff must establish the defendants' interference proximately caused the plaintiff's injury.[7]   The plaintiff must prove the defendant took an active part in persuading the party to breach its contract.[8]  Here, Defendants have no evidence that GFI knew that Defendants were in the process of selling any domain names or reconfiguring any domain servers.  Nor have they shown GFI actively persuaded any

---

[5] *Prudential Ins. Co. v. Financial Rev. Servs.*, 29 S.W.3d 74, 80 (Tex. 2000).
[6] Def. App. 2.
[7] *Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 474 (Tex. App. – Houston [1st Dist. 2006, pet. denied).
[8] Davis v. HydPro, Inc. 839 S.W.2d 137, 139-40 (Tex. App. – Eastland, 1992)("It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise.")

4

party to breach. To the contrary, GFI requested that Tucows conform to its own reasonable policy.

### B. GFI's Actions to Protect Its Trademark Are Immune Under the *Noerr-Pennington* Doctrine.

As a threshold matter, whether *Noerr-Pennington* immunity applies to domain name disputes is a purely legal issue. The court, therefore, should decide whether to immunize GFI's alleged conduct on which Defendants base their counterclaims.[9]

#### 1. Defendants' Counterclaims Are Barred Under Noerr-Pennington.

Counterclaims six and seven fail because the *Noerr-Pennington* doctrine confers immunity on those seeking to protect their trademark rights in domain name disputes. GFI, therefore, is absolutely immune from liability for any claims based on the Tucows Letter. The Tucows Letter is specifically covered under the *Noerr-Pennington* doctrine and more broadly covered under GFI's First Amendment right to petition for redress.[10]

This issue is firmly settled in the Fifth Circuit. The *Noerr-Pennington* doctrine protects "those acts reasonably and normally attendant upon effective litigation."[11]  This Circuit has also applied *Noerr-Pennington* immunity to cover tort claims.[12]  And, closer to home, the United States District Court for the Northern District of Texas has ruled that *Noerr-Pennington* immunity applies specifically in the context of domain name disputes.[13]  There, the Court granted summary judgment, finding the defendants' "efforts to enforce their trademark rights,

---

[9] *See TEC Cogeneration v. Florida Power & Light Co*, 76 F.3d 1560, 1567 (11th Cir. 1996)(the application of *Noerr-Pennington* immunity is a question of law).

[10] *See. E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 1961; *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965).

[11] *Coastal States Mktg, Inc. v. Hunt*, 694 F.2d 1358, 1367 (5th Cir. 1983)(immunizing threats of litigation that were incidental to the proceeding litigation).

[12] *Barq's, Inc. v. Barq's Beverages, Inc.*, 677 F.Supp 449, 453 (E.D. La. 1987)(applying *Noerr-Pennington* doctrine to immunize demand letter that preceded a trademark infringement lawsuit.)

[13] *March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc.*, et al., No. 3 CV 0398, 2002 WL 32168078, at *1(N.D. Tex. June 4, 2002).

5

namely . . . sending cease and desist letters; and . . . invoking the domain name dispute resolution procedure" of the registrar were immunized from claims of tortious interference and abuse of process.[14]   Moreover, the Northern District is not alone in extending immunity to domain name disputes.[15]

Here, Defendants argue that *Noerr-Pennington* immunity does not apply to their counterclaims.  Rather than using case law from this Court's jurisdiction, Defendants rely on *ad hominem* attacks and references to factually dissimilar case law found outside this Circuit.  These arguments are unpersuasive as they ignore controlling precedent.

As described above, the Tucows Letter informed Defendants' registrar of the current litigation and requested a registration lock on the infringing domains until the disputes in this lawsuit could be resolved.  Defendants' facts are limited solely to events arising from the Tucows Letter.  Any claims based on these facts are barred by the *Noerr-Pennington* doctrine as they directly relate to GFI's attempts to protect its trademark.  Informing the domain name registrar of intellectual property infringement is, of course, the routine and accepted method to protect trademark rights in domain name disputes.  As shown in the letter itself, GFI merely stated the lawsuit was filed and requested the domains be locked, an outcome consented to by the Defendants in the Tucows Master Services Agreement.

---

[14] *Id.*

[15] *Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 189 F.Supp.2d 385, (E.D. Va.)(dismissing domain name registrant's abuse of process and tortious interference counterclaims arising from a successful WIPO proceeding because of *Noerr-Pennington* immunity, and explaining that it is "clear that the doctrine has been extended to cover immunity to a variety of tort claims, including claims of tortuous interference," and it is "equally clear that . . . activity aimed at seeking redress from courts is immunized."); Virtual Works, Inc. v. Network Solutions, Inc., No. CRIM. A 99-1289-A, 1999 WL 1074122, at *1 (E.D Va. Nov. 23, 1999)(granting dismissal of tortious interference claim because "the Noerr-Pennington Doctrine confers immunity on the trademark holder for its actions to protect the mark.").

This action is entirely consistent with a trademark holder's right to protect its property. In fact, if GFI did not act to protect its trademark, it risked losing or weakening it.[16]    As demonstrated time and time again, holders of recognizable trademarks have acted to prevent the exact same infringement through cease and desist letters to Defendants.  They did so because they were legally entitled to do so and because they risked losing brand association of their mark.

### 2.  The "Sham Exception" Is Not Applicable.

Second, Defendants argue that if the *Noerr-Pennington* Doctrine applies to domain name disputes, the claims fall into the narrow exception of "sham" petitioning.  The exception covers actions that are "a mere sham to cover what is nothing more than an attempt to interfere directly with business relationships of a competitor."[17]    To apply, "[t]he evidence must show that a defendant's activities were 'objectively baseless,'" meaning that no reasonable person could realistically expect success on the merits.[18]

The Tucows Letter, as a matter of law, cannot meet the criteria of this exception.  A plain reading of the letter shows GFI merely requested that Tucows act according to its own policies and attached a copy of the complaint.  And, if Defendants were sincere in their belief that "Plaintiff's claim is entirely without merit," they would have filed a motion to dismiss pursuant to Fed. R. Civ. 12(b)(6) well before now.  As the allegations in the complaint are sustained, Defendants have no basis to argue that GFI's claims are objectively meritless.

Furthermore, Defendants' own registrar, after reviewing the allegations in the complaint, acted at its discretion and suspended Defendants' domains.  On its own accord, it recognized

---

[16] *Conan Props., Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 153 n.4 (5th Cir. 1985);  J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 17:17 (4th ed. 1996)("It is possible that the plaintiff's mark has been 'weakened' by widespread use in the market and that such use resulted from plaintiff's failure to sue infringers. That is, the only way to prevent a market from becoming 'crowded' with similar marks is a program of aggressive enforcement . . . .").

[17] *Coastal States Mktg.*, 694 F.2d at 1368; *Prof'l Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 61, (1993)("PRE").

[18] *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 862 (5th Cir 2000).

GFI's claims were not frivolous. GFI had no power over Tucows decision to enforce its registration lockdown policies. The Tucows Letter merely reiterated that Defendants are using GFI's trademark and requested it implement its own reasonable policy until the dispute could be resolved. It was neither frivolous nor objectively meritless. The letter and the underlying suit, for that matter, are based on GFI's own right to protect its valid trademark against infringement. Accordingly, the sham litigation exception does not apply.

### C. Defendants' Reverse Domain Name Hijacking Claim is Ripe For Summary Judgment.

Under 15 U.S.C. § 1114(2)(D)(iv), "[i]f a registrar, registry, or other registration authority takes an action described under clause (ii) based on a knowing and material misrepresentation by any other person that a domain name is identical to, confusingly similar to, or dilutive of a mark, the person making the knowing and material misrepresentation shall be liable for any damages, including costs and attorney's fees, incurred by the domain name registrant as a result of such action." To support their claim, Defendants rely on two statements made by GFI to Tucows. These statements are that (1) "Defendants have used Goforit's federally registered GOFORIT mark in connection with the Accused Domain Names"; and that (2) "Defendants have incorporated the GOFORIT Mark as a subdomain."[19]

A plain reading of the Tucows Letter and the accompanying complaint shows that GFI made no false or material misrepresentations. To the contrary, GFI had clear evidence that its trademark was being used as a subdomain in connection with numerous domains registered by the Defendants. There is no dispute that the GFI Mark was used as a part of Defendants' subdomains through Wildcard DNS.[20] In fact, Defendants readily admit this fact as they eventually configured their domain names to exclude "goforit" from the Wildcard DNS

---

[19] Dkt. No. 123 at 5-6.
[20] Def. App. 2 at ¶ 6.

8

process.[21]   Therefore, the GFI mark was used as a subdomain and it was used in connection with Defendants' registered domain names.  Even after Defendants represented to GFI that they excluded goforit as a subdomain to its websites, goforit continued to appear as a subdomain, other than the first, of Defendants' websites.  As Defendants had no rights or legitimate interests in the GOFORIT Mark, GFI was entirely truthful in its statements made in the Tucows Letter.  Clearly, GFI made no false statements or misrepresentations to Tucows.  In fact, the veracity of GFI's statements are proven by Defendants' own log files showing "goforit" as a subdomain in their confusing websites such as com.org.

Lastly, Defendants' claims for reverse domain name hijacking are barred by the Noerr-Pennington doctrine, as  the statements were incident to this lawsuit.  As described above, GFI sent the Tucows letter to protect its valid mark.  This is clearly petitioning conduct incident to the underlying litigation.  Accordingly, GFI is absolutely immune from any liability stemming from the Tucows Letter.

### III. CONCLUSION

For all these reasons, GFI requests the court grant summary judgment as to each and every counterclaim of Defendants.

Respectfully submitted,

/s/ Reid D. Miller_____
Richard A. Adams, admitted pro hac vice
Texas Bar No. 00786956
Phillip N. Cockrell, admitted pro hac vice
Texas Bar No. 04465500
Corey D. McGaha, admitted pro hac vice
Texas Bar No. 24057992
Reid D. Miller, admitted pro hac vice
Texas Bar No. 24067769
**PATTON ROBERTS, PLLC**

---

[21] Id.

2900 St. Michael Drive, Suite 400
Texarkana, TX  75503

Alfonso Garcia Chan
Texas Bar No. 24012408
Patrick J. Conroy
Texas Bar No. 24012448
**SHORE CHAN BRAGALONE, LLP**
901 Main Street, Suite 3300
Dallas, TX 75202

Marshall C. Wood
Texas Bar No. 00797690
Cory J. Floyd
Texas Bar No. 24049365
Cyndia M. Hammond
Texas Bar No. 24035891
**NORTON & WOOD, LLP**
315 Main Street, P.O. Box 1808
Texarkana, TX 75501-1808

**ATTORNEYS FOR PLAINTIFF
GOFORIT ENTERTAINMENT, L.L.C.**

## CERTIFICATE OF SERVICE

On June 18, 2010, I electronically submitted the foregoing document to the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  I hereby certify that I have served all counsel electronically or by another manner authorized by the Federal Rule of Civil Procedure 5(b)(2).


        /s/    Reid D. Miller
            Reid D. Miller